**Venson C. DAVIS Appellant,**

v.

**John ASHCROFT, United States Attorney General,**

No. 02–1863.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 10, 2002.

Decided Feb. 6, 2003.

Before FUENTES, GARTH, Circuit Judges, and WALLACH, Judge.[1]

OPINION

GARTH, Circuit Judge.

Plaintiff Venson C. Davis appeals the District Court's grant of the Government's summary judgment motion. Davis, an African–American, had alleged that in violation of Title VII he was denied a promotion based on his race and in retaliation for providing an affidavit adverse to a friend and colleague of William Slattery,

---

1. The Honorable Evan J. Wallach, United States Court of International Trade, sitting by designation.

the decision-maker responsible for the promotion decision. Because we agree with the District Court that Davis' claim raised no genuine issues of material fact, we will affirm.

## I.

Because we write solely for the benefit of the parties, we recount the facts and procedural history of the case only as they are relevant to the following discussion.

Venson Davis, an African–American, brought this employment discrimination action against the Government, alleging that in the course of his employment with the Immigration and Naturalization Service ("INS"), he was passed over for a promotion on the basis of his race and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

Davis began his career as an INS Border Patrol Agent in 1980. In 1996, he had advanced through the ranks to become a GS–12 level Supervisory Immigration Inspector at Newark International Airport ("NIA"). On May 29, 1996, the INS posted a vacancy announcement for a GS–13 Supervisory Detention and Deportation Officer position at the INS's Elizabeth, New Jersey Detention Facility. Davis applied and was placed on a staffing list as one of six applicants that were deemed best qualified, as compiled by the INS' Human Resources Office. Mason Ruhlen, a Caucasian who had a higher ranking of GS–13, was also on this list.

INS Executive Associate Commissioner William Slattery, third in command of the entire INS, had selecting authority for the Detention and Deportation position. To get recommendations for the position, he sought the input of the Acting Eastern Regional Director, Robert Brown, who in turn sought a recommendation from the New Jersey District Director Warren Lewis, an African–American. Lewis, after consulting the Human Resources list, and after consulting with Leroy Frederick, an African–American who was the supervisory officer at the Elizabeth Detention Facility, forwarded a list of candidates to Brown naming Davis as his first choice, followed by Ruhlen and Earline Boyer, an African–American who had not even applied for the position.

Lewis wrote that Davis had been a Supervisory Inspector at NIA for four years and had been a Border Patrol Agent for twelve years; that Ruhlen has been a Supervisory Special Agent for eight years and had been with the INS for over eighteen years; and that Boyer was a GS–13 with eleven years supervisory experience and twenty-eight years total INS experience, with her previous experience as an Investigator and Contact Representative.

After reviewing Lewis' letter, Deputy Assistant Regional Director Michael Rozos, who worked under Brown, concluded that because the letter listed more than one candidate and a candidate who did not even apply (and would thus present labor management problems), that Lewis was not satisfied with the candidate pool. Accordingly, Rozos recommended that the position be re-announced. Subsequently, Lewis was replaced by Andrea Quarantillo who was delegated the responsibility to select candidates for the Detention and Deportation position.

Accordingly, a new vacancy announcement was posted for this position. All those who had applied under the first announcement were automatically considered for the position. Frederick, the supervisory officer who, as noted earlier, was an African–American, interviewed the candidates, including Davis and Ruhlen. Frederick found Ruhlen to be the more desirable candidate and recommended Ruhlen's selection to Quarantillo. Unlike Davis, Ruhlen's experience encompassed working

with deportation and detention officers. Moreover, Frederick had known Ruhlen for fifteen to twenty years and Ruhlen presented better and more straight-forward responses to the interview questions. Ruhlen was chosen on November 15, 1996.

On May 15, 1997, Davis filed an Equal Employment Opportunity Commission ("EEOC") Complaint against Quarantillo for failure to promote him and for retaliation. On March 8, 2002, the District Court granted the Government's motion for summary judgment on Davis' claims because there was insufficient evidence to permit a reasonable jury to find that the Government's reasons for failing to promote Davis were unbelievable. This timely appeal followed.

## II.

We exercise plenary review over an order granting summary judgment, applying the same standard that the district court should have initially applied. *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994). In so doing, we must review the record in the light most favorable to Davis, drawing all inferences from the facts in his favor and determine whether genuine issues of material fact exist. *Armbruster*, 32 F.3d at 777. We have jurisdiction to hear Davis' appeal pursuant to 28 U.S.C. § 1291.

## III.

On appeal, Davis claims that the Government's reason for re-announcing the position was pretextual for race discrimination. Davis claims that the Government's reason for ultimately failing to promote him was similarly pretextual. He also claims that the Government failed to promote him in retaliation for his protected activity (the filing of an affidavit with the EEOC, *see* III.B, *infra*).

## A.

■ Davis has four main arguments to support his position that the Government's reason for its re-announcement of the position and ultimate failure to promote him should not be believed. He claims that: (1) Rozos' determination that Lewis was not satisfied with the candidate pool is inconsistent with Lewis' unequivocal recommendation of Davis at the first announcement; (2) Rozos' conclusion that Lewis was not satisfied with the pool of applicants, without first speaking to Lewis, was implausible; (3) the Government's failure to submit a declaration of Lewis that he was in fact not satisfied with the applicant pool is questionable; and (4) Brown's claim that he was not responsible for selecting candidates was inconsistent with a letter he signed recommending a re-announcement of the position to Slattery.

Davis' attempt to establish race discrimination is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994), we instructed that:

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Id.* at 764.

To discredit the employer's stated reasons, however, the plaintiff cannot merely show that the employer's decision was "wrong or mistaken.... Rather, the non-

moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* at 765. (Internal citations omitted).

Davis' claims are without merit. The District Court correctly concluded that Lewis' recommendation letter was not "unequivocal" because the letter recommends three candidates for the position, one of whom did not even apply for the position. Thus, the letter only buttresses the Government's contention that Rozos was led to believe that the announcement had failed to attract enough qualified personnel. Similarly, a rational juror could not find that Rozos' failure to communicate with Lewis, to confirm Rozos' belief that Lewis had doubts about the applicant pool, amounted to an inconsistency. The issue is not what Lewis believed, but rather whether Rozos' assertion was not credible. *See Fuentes,* 32 F.3d at 765 ("To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") For the same reason, there is no need for the Government to have submitted an affidavit from Lewis that he had doubts as to the applicant pool.

Furthermore, Davis' claim that the Government's explanation for its employment decision should not be believed, because there are inconsistencies in Brown's involvement with the re-announcement, is also without merit. Specifically, Davis claims that because Brown testified that he was not aware of the letter that he signed (that was prepared by Rozos) and forwarded to Slattery, and because Brown does not recall any discussions with Frederick or Lewis about their support of Davis, that these inconsistencies amount to a showing of pretext.

We conclude, as did the District Court, that the fact that Brown was responsible for supervising some 8,000 employees and traveled frequently in that connection, thus requiring him to delegate many of his responsibilities to his staff, like Rozos, including the authority to draft and sign correspondence for him, is not inconsistent with Brown's statement that he did not recall signing the document prepared by Rozos. Similarly, even if Lewis did have a conversation with Brown where he requested that Brown support his nomination of Davis, it is undisputed that the decision to re-announce the vacancy was made by Brown's staff and not by Brown, who had delegated that responsibility to his staff. Nor is there evidence that Brown met with Frederick or personally made the decision to re-announce the vacancy in his letter to Slattery.[2]

### B.

Davis' retaliation claim is also baseless. Previously, in 1995, Lewis had instituted an investigation of corruption in the INS. As a result of this investigation, John Lonergan, an INS employee who was allegedly a close friend of Slattery's, was ultimately fired and convicted of accepting bribes from immigrants. Lonergan com-

---

2. Davis also contends that the Government's reason for its decision was pretextual based on an "inconsistency" in Quarantillo's testimony that she had no involvement in canceling the first announcement of the position vacancy and two memoranda from her to the INS Human Resources Department requesting the vacancy to be re-announced. Quarantillo's deposition testimony reveals that although she sent those memoranda, the decision to re-announce the vacancy had been made by someone else.

menced an EEOC proceeding against Lewis stemming from this investigation. As part of this proceeding, in September 1995, Davis had submitted an affidavit adverse to Lonergan.

On appeal, Davis claims that he was not promoted in retaliation for his filing of an affidavit adverse to Lonergan, a friend and colleague of Slattery. Davis has failed to make out his prima facie case however because, *inter alia,* he has not shown a causal link between the protected activity and the alleged adverse action. *See Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir.2001) (for prima facie case for retaliation claim, plaintiff must show that he engaged in a protected activity; the employer took an adverse employment action after or contemporaneous to said activity; and a causal link exists between activity and adverse action.)

### IV.

In sum, after careful consideration of the record and the parties' submissions, we agree with the District Court that Davis failed to adduce sufficient evidence to preclude summary judgment.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the Government.